# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Kelly Ann Mogavero,

    Defendant

Case No.: 2:15-cr-00074-JAD-NJK

**Order Denying Emergency Motion to Reduce Sentence under 18 U.S.C. 3582(c)(1)(A)(i)**

[ECF No. 111]

    Kelly Ann Mogavero has served roughly 35 months of her 46-month federal sentence for conspiracy to distribute about a pound of methamphetamine out of her home.[1] She now moves the court to reduce her sentence to time served with a period of home confinement, arguing that her health conditions put her at greater risk of complications should the COVID-19 virus infiltrate FMC Carswell where she is serving her sentence.[2] Because I find that the record fails to establish extraordinary and compelling reasons for Mogavero's release, I deny her motion.

## Background

    Mogavero is a 50-year-old woman who is serving a 46-month sentence[3] for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii). Mogavero's path from sentencing to prison was not smooth. Though she was granted the opportunity to self-surrender to the Bureau of Prisons (BOP), she absconded from pretrial

---

[1] ECF No. 86 (judgment).

[2] ECF No. 111.

[3] Followed by five years of supervised release. *See* ECF No. 86.

supervision, disappeared, failed to self-surrender, and was ultimately arrested on a warrant and remanded to custody to await transfer to the BOP.[4]

Mogavero is currently housed at the BOP's Federal Medical Center (FMC) Carswell and projected to complete her sentence on August 30, 2020. Fifteen months ago, she applied to the warden of her prison for compassionate release based primarily on her medical circumstances. She summarized, "I have breast cancer stage 3B and not knowing my life expectancy but have been told it will take my life."[5] On the form, she checked the "yes" box in response to the question, "Do you have a terminal medical condition with an 18 month or less life expectancy."[6] The request was denied, as was her request for reconsideration of that denial, because her medical records did not indicate that she met the medical criteria: "a life expectancy of eighteen months or less" or an end-of-life "trajectory."[7]

Nearly a year after the warden's denial, Mogavero filed this motion asking the court to grant her a sentence reduction and order her immediately released to home confinement with her family "based on her breast cancer diagnosis, on-going treatment, and [the fact] that she is at a high risk of contracting COVID-19 while in custody."[8] The medical records that Mogavero has

---

[4] *See, e.g.*, ECF Nos. 98 (minutes from 3/13/17 hearing where Mogavero failed to appear and her whereabouts were reported as "unknown"); 100 (arrest warrant); 101 (order of detention); 105 (minutes from 6/20/17 pretrial-release revocation hearing). As I summarized during the revocation hearing, "the history here is bizarre. We have a number of failures to appear. She didn't surrender. She basically disappeared. The allegations are that she was living in her father's garage, sneaking in there. I mean, it's a very bizarre situation. There's—I recall seeing also allegations that she was using someone else's medical information. I don't know what to believe, quite honestly. . . . So this idea that she was diagnosed with breast cancer, I – I mean, we have no documentation of that; is that correct? Defense counsel: That's correct.").

[5] ECF No. 112-1 at 9.

[6] *Id*. at 10.

[7] ECF No. 114-1 at 3 (4/22/19 Response to Request for Administrative Remedy).

[8] ECF No. 111 at 1.

submitted in support of this motion are at least nine months old.[9] The government opposes Mogavero's motion[10] and provides more recent records that reflect that the conditions that she cites as the basis for her request are either gone or improving.[11] Indeed, an October 31, 2019, report shows no "evidence of malignancy."[12]

## Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[13] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[14] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has asked the BOP to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request.[15] The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[16]

---

[9] ECF No. 112 at 1–60.

[10] ECF No. 114.

[11] *See* ECF No. 111 at 2 ("Ms. Mogavero also has a mass on her cervix that will likely require additional treatment."); *and compare with* ECF No. 115 at 2–8 (suggesting that this is no longer present due to subsequent procedures) and ECF No. 115 at 14 (stating "No need for specific follow up with gynecologic oncology").

[12] ECF No. 115 at 11.

[13] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[14] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[15] 18 U.S.C. § 3582(c)(1)(A)(i).

[16] *Id*.

**A.     Mogavero has not exhausted the administrative process for this release request.**

It does not appear that Mogavero has properly exhausted the administrative process before bringing this request before the court. She did ask the warden to grant her compassionate relief. But that request was made 15 months ago; it was based on medical information that appears now to be outdated and no longer entirely true; and it did not mention COVID-19 concerns, which are central to this motion.[17]  Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden. Indeed, 28 C.F.R. § 571.61, which outlines the process for submitting a § 3582(c)(1)(A) request to the warden, requires the request to contain, "at a minimum . . . [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration."[18]  Mogavero's motion is based on cancer plus COVID-19 exposure risks—and not merely her cancer diagnosis—but this new calculus was not presented to the warden. Mogavero has thus failed to properly exhaust the administrative process with the warden before submitting this motion, and this deficiency alone justifies denying her motion.[19]

---

[17] The court recognizes, of course, that COVID-19 is a recent development.

[18] *See* 28 C.F.R. § 571.61 ("The inmate's request shall at a minimum contain the following information: (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration"); *see also Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (discussing the doctrine of administrative remedies).

[19] Exhaustion would have served a key purpose in this case in particular. The BOP is uniquely suited to understand Mogavero's current health and circumstances relative to the rest of the prison population and identify extraordinary and compelling reasons for her release. It would have access to her most up-to-date medical information to do so, and it would know the particular COVID-19 risks that she faces because it is aware of the protocols being implemented at the medical facility she is housed at. Plus, it appears that Mogavero may be imminently transferred to home confinement under 18 U.S.C. § 3624(c), though the parties were unable to confirm the status of this transfer. *See* ECF No. 114 at 7; ECF No. 117.

**B. The record does not contain extraordinary and compelling reasons for Mogavero's early release.**

Even if Mogavero had properly presented her request to the warden before filing this motion, I would deny it for the separate and independent reason that the record does not demonstrate that compassionate release is now warranted. Although the statute does not define "extraordinary and compelling circumstances," the U.S. Sentencing Commission has identified four categories of situations that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons."[20] Mogavero contends that she falls into the medical-condition category. The Sentencing Commission finds extraordinary and compelling reasons under this category when the defendant has (1) a terminal illness or (2) a physical, mental, functional, or cognitive impairment "that substantially diminishes" her ability "to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover."[21] A terminal illness is further defined as "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."[22]

Mogavero has not demonstrated that her medical situation presents extraordinary and compelling circumstances for compassionate release. Mogavero acknowledges that her BOP providers have not given her an end-of-life trajectory,[23] so she argues that "there is a grave risk that, should the virus infiltrate" Carswell, "it may amount to a swift death sentence" for her

---

[20] U.S.S.G. 1B1.13, application note 1(A).
[21] *Id.*
[22] *Id.*
[23] ECF No. 111 at 5.

"considering her severely compromised health."[24] But Mogavero's claims that she is battling breast cancer and has a mass on her cervix, putting her at greater risk of contracting COVID-19,[25] are dubious because additional, recent medical records reflect that her conditions and prognosis have improved since she presented her request to the warden in January 2019.[26] Even if Mogavero's characterization of her condition were supportable, the notion that she would be safer or better cared for at her father's home than at a BOP medical facility is speculation. Although the COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented, there are no confirmed cases of COVID-19 at Carswell,[27] and the BOP has implemented a detailed COVID-19 response plan for federal inmates.[28] Plus, Carswell is a medical facility designed to care for female inmates with special medical needs, and its staff are familiar with Mogavero's personal conditions. Thus, I cannot conclude that Mogavero's health conditions, even in the face of the COVID-19 pandemic, provide extraordinary and compelling reasons for her early release.

. . .

---

[24] *Id*. at 15.

[25] *Id*. at 2.

[26] ECF No. 115. The court remains skeptical of Mogavero's candor in light of her history with this court and her failure to provide the additional medical records that the government did, which reflect changes in her medical condition and undermine her arguments.

[27] ECF No. 114 at 9.

[28] https://www.bop.gov/coronavirus/covid19_status.jsp, last visited 4/13/2020.

**Conclusion**

IT IS THEREFORE ORDERED that Defendant Kelly Ann Mogavero's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) **[ECF No. 111] is DENIED.**

Dated: April 13, 2020

_____
U.S. District Judge Jennifer A. Dorsey